FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 02 2012 ★
BROOKLYN OFFICE

D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
LUKE DAWKINS,

               Petitioner,

-against-

WILLIAM LEE,

               Respondent.
----------------------------------------------------------------- X

11-CV-356 (ARR)

<u>NOT FOR ELECTRONIC
OR PRINT PUBLICATION</u>

<u>ORDER</u>

ROSS, United States District Judge:

On January 10, 2011, Luke Dawkins ("petitioner"), appearing <u>pro se</u>, filed a petition for a writ of habeas corpus challenging his criminal conviction pursuant to 28 U.S.C. § 2254. In his petition, he claims that the state court improperly precluded certain cross-examination of the police officers who testified at his pretrial hearing, held pursuant to <u>United States v. Wade</u>, 388 U.S. 218 (1967). For the reasons stated below, the petition is denied.

## BACKGROUND

Following a bench trial, petitioner was convicted of murder in the second degree, in violation of New York Penal Law § 125.25[1], and of criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03[2]. At trial, evidence was adduced that, at approximately 4:30 a.m. on September 18, 2006, petitioner shot and killed Anton Green, his friend and housemate, in the presence of Ann Marie Joseph ("Joseph"). The evidence demonstrated that Joseph had spent approximately four hours in petitioner's company immediately prior to the shooting and that, during that time, petitioner showed Joseph a document listing his full name and a prior manslaughter conviction. After shooting Green, petitioner fled downstairs, and Joseph saw him trying to exit through the back door of the house

1

and heard him saying that he needed to get rid of the gun. Joseph then left the house, returned to the shelter where she was living, slept for a period of time, and called the police after she woke up. Joseph identified petitioner in a photo array later that day. Two other individuals also identified petitioner from the same photo array. The following day, after petitioner had surrendered himself to the police, Joseph picked petitioner out of a lineup.

Before trial, petitioner moved for the suppression of the identifications. On December 19, 2007, and February 20, 2008, the court held a <u>Wade</u> hearing on petitioner's motion. At the hearing, Detectives Lee Abrahall and Kevin Stoecker testified about the conduct of the photo arrays and lineup. On the basis of their testimony, which the court credited in all relevant and pertinent aspects, the court made the following findings of fact in a written decision:

> On September 18, 2006, as part of a homicide investigation, Det. Abrahall assembled a photographic lineup that contained six photographs. One photograph depicted defendant; the other five photographs depicted individuals from the photograph manager system that contained photographs of all arrestees in the City of New York. From thousands of individuals who matched defendant's basic physical characteristics, Det. Abrahall selected photographs of five individuals who closely resembled defendant. Detective Abrahall placed defendant's photograph in position number one.
>
> On that date, at approximately 12:15 a.m., at the 103rd Pct. Detective Squad, Det. Abrahall met with a witness who had lived in the same home with defendant for one year. The detective explained that he would be shown an array of six photographs. He asked the witness to indicate whether he recognized anyone in the photo array. The witness identified the person he knew as "Luke."
>
> At approximately 12:40 a.m., Det. Abrahall conducted another photographic lineup procedure with a second witness using the same photo array. Before showing the photo array to the second witness, Det. Abrahall made a pen marking on the left side of the neck of each individual depicted in the photo array. He again explained the procedure to the witness, who identified the defendant as the person known to her as "Luke."
>
> On September 18, 2006, at approximately 1:20 p.m., Det. Abrahall conduced a third photographic lineup procedure. Detective Stoecker explained the procedure to the third witness, and the witness identified defendant.

> On September 19, 2009, at approximately 11:30 p.m., Det. Abrahall
> conducted a lineup at the 103rd Pct. Detective Squad. Defendant and five other
> male fillers were seated on a bench in the interview room. Each one wore an
> orange windbreaker jacket and cap. Defendant was seated in position number six
> at the request of his attorney, who was also present.
>
> Detective Abrahall explained to the second witness who had viewed the
> photo array that she would be viewing a lineup and should let him know if she
> recognized anyone. When the witness viewed the lineup, Det. Abrahall asked her
> if she recognized anyone. She identified the defendant and stated that she
> recognized him as the person who had shot Anthony.

Dkt. No. 9, Ex. 1 at 1-2. Joseph was the "second witness" who identified petitioner both in the photo array and in the lineup.

The court denied suppression of the identifications. The court noted that "[a]n identification procedure violates due process only if it is conducted in such a manner that there is a 'very substantial likelihood of irreparable misidentification'" and stated that it had examined the photographic arrays that were shown to the witnesses. Id. at 3 (quoting Neil v. Biggers, 409 U.S. 188, 198 (1972). On the basis of that examination, it concluded that their composition was not suggestive because the individuals depicted were sufficiently similar to defendant in general physical appearance to negate any likelihood of misidentification. Id. The court similarly found that the lineup fillers had characteristics that were sufficiently similar to defendant and that the lineup was not suggestive. Id. at 4.

For the purposes of this petition, it is necessary to review some of the detectives' testimony at the Wade hearing. During cross-examination of Detective Abrahall, petitioner attempted to elicit information about what transpired in the investigation before the photo array was assembled, including which witness or witnesses had given descriptions of the perpetrator, what the witnesses had said in their interviews with the detectives, and whether any of the witnesses had mentioned petitioner's name or indicated that they knew petitioner. Hearing

3

Transcript at 18-24. The court sustained objections to these questions and explained that the court's role was to decide whether the photo arrays and lineup were suggestive and that the information petitioner was seeking to elicit was irrelevant in that regard. Id. at 21-22, 24. When asked on cross-examination, Detective Abrahall testified that he did not recall that either of the first two witnesses had given an identifying tattoo as part of the description of the perpetrator. Id. at 30.

During the hearing, petitioner also questioned the detectives about whether the witnesses had any contact with one another. The detectives testified that, to their knowledge, none of the witnesses came into contact with one another while they were at the precinct. Id. at 27, 61. Detective Abrahall indicated that Joseph was free to leave the precinct at any time between her viewings of the photo array and lineup but remained in an interview room, leaving with a female police officer to use the bathroom when needed, for the entire day. Id. at 32-34. The interview room was on the other side of the building from the room into which petitioner was placed when he arrived in the precinct. Id. at 35-36.

After the judge issued his decision on the suppression motion, the case proceeded to a bench trial, which commenced on September 23, 2008. At trial, Joseph testified, in relevant part, that she had identified petitioner in the lineup from having seen him the night before, and she made an in-court identification of petitioner. Trial Transcript at 148, 163. Petitioner was convicted of both charges and, on October 23, 2008, was sentenced to prison terms of twenty-five years to life on the murder count and ten years on the weapons-possession count, to be served concurrently. Sentence Transcript at 17.

Petitioner thereafter appealed his conviction. On appeal, he argued that the court overseeing the Wade hearing improperly precluded petitioner from exploring whether the

4

identification procedures conducted with Joseph were suggestive. In particular, he argued that the court improperly precluded him from questioning the police officers regarding (1) the description given of the perpetrator that was used to create the photo array and (2) possible communications that occurred among and between witnesses and police officers during the identification procedures. See Def.'s Appellate Brief. The Appellate Division affirmed the conviction and held that the Supreme Court did not improvidently exercise its discretion in restricting the scope of the cross-examination of the police officers at the suppression hearing. People v. Dawkins, 71 A.D.3d 782 (2d Dept. 2010). Petitioner applied for permission to appeal to the New York Court of Appeals, which denied leave to do so on May 28, 2010. People v. Dawkins, 14 N.Y.3d 887 (2010). Petitioner subsequently filed the instant habeas petition.

## DISCUSSION

### I. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. Here, petitioner does not argue that the adjudication of his claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the

5

State court proceeding," so at issue is only whether the state court's decision resulted in a decision involving an unreasonable application of clearly established Federal law. Id.

The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. An "objectively unreasonable" application lies somewhere between "merely erroneous and unreasonable to all reasonable jurists." Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000). "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

## II. The Wade Hearing Did Not Involve an Unreasonable Application of Clearly Established Federal Law

Petitioner argues that he is entitled to habeas relief because the state court erroneously limited his questioning of the police officer witnesses who testified at the Wade hearing. Pet. at 6. As he did in his direct appeals, petitioner claims that he was wrongly precluded from asking certain questions about the description of the perpetrator used to create the photo array and about possible communications between the witnesses and the police officers. Because petitioner's arguments before the state courts focused solely on how the precluded testimony might have

6

uncovered problems with the photo array procedures conducted with Joseph, only this claim is exhausted, and the court will construe his petition in this limited fashion. Having reviewed the record, the court finds no grounds on which to grant relief.

Because it is well-established that "federal habeas corpus relief does not lie for errors of state law," Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citation and internal quotation marks omitted), the court shall construe petitioner's claim as alleging that the state court's preclusion of certain questioning at the Wade hearing violated his right to present a complete defense. "Supreme Court precedent makes clear that a criminal defendant is entitled by the Constitution to a meaningful opportunity to present a complete defense." Wade v. Mantello, 333 F.3d 51, 57 (2d Cir. 2003); see Crane v. Kentucky, 476 U.S. 683, 690 ("The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.") (citations and internal quotation marks omitted). "A defendant's right to present relevant evidence is not, however, unlimited; rather it is subject to 'reasonable restrictions,'" including those established by the rules of evidence. Wade, 333 F.3d at 59 (quoting United States v. Scheffer, 532 U.S. 303, 308 (1998). Moreover, where, as here, the state appellate court found that the trial court properly exercised its discretion in ruling on evidentiary matters, habeas relief is available only if this court first finds that the appellate court's determination of the evidentiary issue was objectively unreasonable. Id. at 59-60.

In the instant case, the Appellate Division found proper the trial court's decision to curtail testimony about which witnesses had described the perpetrator, what the witnesses said in their discussions with police, and whether any of the witnesses had mentioned petitioner's name or indicated that they knew petitioner. The court does not find this determination to be objectively unreasonable. When the trial judge explained that he did not find such information relevant to

his determination of whether the photo array was suggestive, defense counsel responded that it was also necessary for the court to decide whether the procedure itself was fair, and the court permitted counsel to proceed with questioning targeted at this objective. Hearing Transcript at 21-22. However, as respondent notes, defense counsel did not thereafter ask what descriptive or other information the witnesses provided to police about the perpetrator. Instead, defense counsel continued with questions about where police obtained the information that factored into preparing the photo array. Id. at 22. As such, petitioner is incorrect in arguing that he was improperly precluded from questioning the police officers about the description used to create the photo array. Petitioner's claim that he was incorrectly prevented from questioning the police about the interactions that occurred between and among the witnesses and police officers is also belied by the record, as both officers testified freely about their interactions with the witnesses and stated that, to their knowledge, the witnesses had no contact with one another.

Nor does the court see how the questions that were actually precluded could have ferreted out relevant information that would establish that the photo array was suggestive. Petitioner, in his appellate brief, speculated that the precluded questions might have shown that the composition of the array was suggestive because the answers to those questions might have revealed that a witness had described, to police, a salient feature that distinguished petitioner from others in the photo array. Appellate Brief at 18. However, a review of the photo array that was shown to Joseph reveals no feature of the salient sort that, in the cases cited in petitioner's appellate brief, were deemed to be overly suggestive. See id. at 18-19. All of the participants in the photo array were African American males in their twenties; they had closely shaven hair, comparable builds, and similar markings on their necks; and petitioner's clothing did not distinguish him from the others in the array. As such, petitioner cannot establish that the state

8

court's resolution of these evidentiary issues was an objectively unreasonable application of clearly established Supreme Court law, and habeas relief is not available.

## CONCLUSION

The petition for a writ of habeas corpus is denied. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. In addition, this court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-445 (1962). The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/S/
_____
Allyne R. Ross
United States District Judge

Dated: May 2, 2011
Brooklyn, New York

SERVICE LIST:

**Petitioner:**

Luke Dawkins
08-A-5816
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582